[No. 65178-7. En Banc.]
Argued January 14, 1998. Decided June 4, 1998.
PACCAR, INC., *Petitioner,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

TALMADGE, J., DURHAM, C.J., and DOLLIVER, J., dissent by separate opinion; MADSEN, J., did not participate in the disposition of this case.

*Bogle & Gates, P.L.L.C.*, by *D. Michael Young, Ronald T. Schaps*, and *Catherine A. Pree*, for petitioner.

*Christine O. Gregoire, Attorney General,* and *John S. Barnes, Assistant,* for respondent.

SMITH, J. — Petitioner PACCAR, Inc. seeks review of a Court of Appeals decision which reversed a judgment of the Thurston County Superior Court granting summary judgment in favor of Petitioner and ordering a refund of taxes paid on a deficiency assessment issued by Respondent Washington Department of Revenue. We reverse.

## QUESTION PRESENTED

The question presented in this case is whether, under the 1979 version of RCW 82.32.060, a taxpayer may receive a refund of excess taxes paid on a deficiency assessment for a period prior to the statutory four-year refund period if the taxpayer files a refund petition within four years of paying the deficiency assessment.[1]

## STATEMENT OF FACTS

Petitioner PACCAR, Inc. (PACCAR), a company that

---

[1]RCW 82.32.060 (1979). **Excess payment—Credit or refund—Payment of judgments for refund.** If, upon receipt of an application by a taxpayer for a refund or for an audit of his records, or upon an examination of the returns or records of any taxpayer, it is determined by the department that within the statutory period for assessment of taxes prescribed by RCW 82.32.050 *a tax has been paid in excess of that properly due, the excess amount paid within such period shall be credited to the taxpayer's account or shall be refunded to the taxpayer, at his option. No refund or credit shall be made for taxes paid more than four years prior to the beginning of the calendar year in which the refund application is made or examination of records is completed.* . . .

. . . .

(Emphasis added.)

The statute was amended in 1989, 1990 and 1992. The 1979 version was in effect in 1985.

engineers, manufactures, and sells heavy-duty trucks and industrial equipment, uses some of its surplus funds to make short-term loans to its subsidiaries.[2] During the years 1977 through 1981, PACCAR paid $304,678.00 in business and occupation (B&O) tax on interest from these loans.[3]

In 1982, Respondent Washington State Department of Revenue (Department) audited PACCAR for the years 1977 through 1981 and determined an overall tax deficiency of $176,205.00, including interest. In concluding this amount, the Department "netted" or combined different types of taxes such as sales, use, and B&O taxes.[4] Although the deficiency was based primarily upon use taxes, it also included $18,081.00 in B&O taxes on interest from PACCAR's loans to its subsidiaries.[5] The Department issued the deficiency assessment for $176,205.00 on December 21, 1982.[6]

PACCAR paid the full deficiency assessment of $176,205.00 on February 14, 1983 and immediately filed a petition for refund.[7] PACCAR claimed the interest it received from loans to its subsidiaries was not subject to B&O tax and therefore it was entitled to a refund of its overpayments or an offset of those overpayments against the deficiency assessment.[8] The Department denied PACCAR's refund request. PACCAR did not appeal the denial.[9]

On December 30, 1985, PACCAR under RCW 82.32.180 filed a complaint against the Department in the Thurston County Superior Court,[10] asserting its position that interest received from loans to its subsidiaries was not subject to

---

[2]Clerk's Papers at 8.

[3]Clerk's Papers at 136.

[4]Clerk's Papers at 103-08, 88.

[5]Clerk's Papers at 139.

[6]Clerk's Papers at 88.

[7]Clerk's Papers at 124.

[8]Clerk's Papers at 125.

[9]Clerk's Papers at 118-19.

[10]Clerk's Papers at 3-5.

B&O tax. PACCAR claimed it was entitled to satisfy the December 21, 1982 deficiency assessment by a credit for or offset against the B&O tax overpayments it made during the years 1977 through 1981. In addition, PACCAR requested a refund of B&O taxes it overpaid from 1981 to 1985.[11]

On December 8, 1994, PACCAR filed a motion for summary judgment in the Thurston County proceedings.[12] After making a number of rulings on legal issues, including a conclusion that PACCAR is not subject to B&O tax on interest it receives from loans to its subsidiaries, the court, the Honorable Paula Casey, continued the hearing until February 16, 1995.[13] The parties stipulated that (1) the $304,678.00 PACCAR paid in B&O taxes on interest from loans to its subsidiaries in the years 1977 through 1981 was an overpayment because the taxes were not properly due; (2) the Department has refunded PACCAR $102,071.00 in B&O tax overpayments for the year 1981, leaving $202,607.00 yet to be refunded; and (3) the postassessment adjustments, including an $18,081.00 refund of B&O taxes on interest from subsidiary loans, reduced the amount of the 1982 deficiency assessment available for offset to $140,992.00.[14]

At the hearing on February 16, 1995, the Department emphasized that PACCAR's overpayment consisted only of B&O taxes and the deficiency assessment included several types of taxes. It argued that RCW 82.32.060 did not allow "netting" different types of taxes against each other.

The trial court disagreed with the Department and granted PACCAR's motion for summary judgment on April 11, 1995 for the excess amount paid of $176,205.00, reduced to a net refundable overpayment of $140,992.00 plus

[11]Clerk's Papers at 4.

[12]Clerk's Papers at 206.

[13]Clerk's Papers at 206-08.

[14]Clerk's Papers at 136-39.

$51,406.00 refund interest, for a total of $192,398.00. The order stated:[15]

> In making that assessment, the DOR did not recognize that PACCAR's subsidiary interest was deductible. As a result, the DOR assessed $176,205 of additional taxes and interest against PACCAR when PACCAR had already paid taxes of $304,678 in excess of those properly due for tax years 1977 through 1981. PACCAR should, therefore, have received a refund in 1982 instead of an assessment of additional taxes. The entire amount PACCAR paid as a result of the assessment ($176,205) was assessed against, and paid by PACCAR in excess of the amount properly due for those tax years. In requiring a refund of 'any amount . . . paid in excess of that properly due,' RCW 82.32.060 does not limit the refund to the particular type of tax as to which there was a substantive error. PACCAR is entitled to a refund of the entire amount paid in 1983 in excess of that properly due (for tax years 1977 through 1981), including all taxes under Title 82 that were PACCAR's responsibility (i.e., use taxes and B&O taxes) – as opposed to taxes that were someone else's responsibility and that PACCAR merely collected in trust. That excess amount paid ($176,205) must be reduced by the portion otherwise recovered by PACCAR, leaving a net amount overpaid and refundable of $140,992, plus $51,406 refund interest.
>
> . . . .
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
>
> 1. The motion of Plaintiff PACCAR Inc. for summary judgment is granted.
>
> 2. Judgment is entered against Defendant DOR in favor of Plaintiff in the amount of $181,390, plus prejudgment interest of $67,511 through April 11, 1995 and an additional $14.91 per day for each day from April 11, 1995 until judgment is entered.
>
> 3. Post-judgment interest will accrue pursuant to RCW

---

[15]Clerk's Papers at 208-09. The order actually provided for judgment against the Department for $181,390.00, plus prejudgment interest of $67,511.00, for a total of $248,901.00, plus $14.91 per day from "April 11, 1995 until judgment is entered."

4.56.110(3) at the rate of 12% from the date of this judgment to the date the refund is paid by Defendant.

On May 11, 1995, the Department filed notice of appeal.[16] The Court of Appeals, Division II, on February 7, 1997 reversed the decision of the Thurston County Superior Court.[17] The Court of Appeals concluded PACCAR was not entitled to a refund of overpayments made in the years 1977 through 1980 because it did not commence its suit until 1985 and RCW 82.32.060 precludes refund of taxes paid prior to the four-year refund period. The court held that "taxes that have become nonrefundable may not be credited against a later deficiency assessment of that same period."[18]

PACCAR petitioned this Court for review which we granted on June 3, 1997.

## DISCUSSION

There is no final agency action to review in this case because it was filed by Petitioner PACCAR as an original action in the Thurston County Superior Court under RCW 82.32.180.[19] When reviewing an order of summary judgment, this Court engages in the same inquiry as the trial court.[20] Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

[16]Clerk's Papers at 203.

[17]*PACCAR, Inc. v. Department of Revenue*, 85 Wn. App. 48, 56, 930 P.2d 954 (1997).

[18]85 Wn. App. at 49.

[19]RCW 82.32.180. **Court appeal—Procedure.** Any person, . . . [who] having paid any tax as required and feeling aggrieved by the amount of the tax may appeal to the superior court of Thurston county, within the time limitation for a refund provided in chapter 82.32 RCW or, if an application for refund has been made to the department within that time limitation, then within thirty days after rejection of the application, whichever time limitation is later. . . .

[20]*Malnar v. Carlson*, 128 Wn.2d 521, 534, 910 P.2d 455 (1996).

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[21]

Petitioner contends it is entitled to a refund under the 1979 version of RCW 82.32.060 because on February 14, 1983 it paid taxes in excess of the amount "properly due" and in 1985 filed a refund application within the four-year statutory refund period. Petitioner also contends the statute does not limit a refund to cases in which the excess tax and deficiency assessment tax are of the same type. According to Petitioner, its right to a refund is supported by this Court's decision in *Puget Sound Power & Light Co. v. State*[22] which was decided under the 1961 version of RCW 82.32.060;[23] and although the statute has been amended several times since 1961,[24] its relevant provisions remain unchanged. Petitioner argues that the Court of Appeals erred in not addressing the statutory standard, the Superior Court's order, or this Court's decision in *Puget Power*.

Respondent contends, to the contrary, that Petitioner is attempting to offset the nonrefundable excess taxes against a deficiency assessment payment which is no longer al-

---

[21]*Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 278, 937 P.2d 1082 (1997).

[22]70 Wn.2d 493, 424 P.2d 634 (1967).

[23]RCW 82.32.060. **Excess payment—Credit or refund—Payment of judgments for refund.** If, upon application by a taxpayer for a refund . . . it is determined by the tax commission that within the two years immediately preceding the receipt of the commission of the application by the taxpayer for a refund . . . a tax has been paid in excess of that properly due, the excess amount paid within such period of two years shall be credited to the taxpayer's account or shall be refunded to the taxpayer, at his option. No refund or credit shall be allowed with respect to any payments made to the commission more than two years before the date of such application or examination. *Where a refund or credit may not be made because of the lapse of said two year period, the amount of the refund or credit which would otherwise be allowable for the portion of the statutory assessment period preceding the two year period may be offset against the amount of any tax deficiency which may be determined by the commission for such statutory assessment period. . . .*

. . . .

(Emphasis added.)

[24]Amended in 1979, 1989, 1990 and 1992.

lowed under the 1979 version of RCW 82.32.060. Respondent contends, in the alternative, that if this Court finds the statute does allow an offset, the excess tax and deficiency assessment tax must be based upon the same type of tax. According to Respondent, *Puget Power* is not on point because this Court based its decision in that case on the 1961 version of RCW 82.32.060 and applied an offset provision which was deleted in the 1979 amendment. Respondent argues that the Court of Appeals correctly decided the 1979 amended statute does not allow an offset, thus making *Puget Power* inapplicable to this case.

The 1979 version of RCW 82.32.060, in effect when PACCAR filed its refund petition in 1985, states that if a tax has been paid in excess of that properly due, the excess amount shall be credited or refunded if a refund petition is filed, but that no credit or refund would be made for "taxes paid more than four years prior to the beginning of the calendar year in which the refund application is made or examination of records completed. . . ."

Petitioner seeks a refund of taxes paid on a deficiency assessment covering tax years 1977 to 1981. Petitioner argues it is entitled to a refund under RCW 82.32.060 because its payment of the deficiency assessment in 1983 exceeded the "amount properly due" and the payment was made within the four-year statutory refund period, that is, four years from the date of payment to the date of its 1985 petition for refund.

Petitioner contends this Court's decision in *Puget Power* supports its argument. According to Petitioner, despite subsequent amendments to RCW 82.32.060, this Court's interpretation of the statute in the *Puget Power* case is still binding because the provisions of the statute upon which the Court based its decision remain unchanged.[25] Petitioner argues that this Court concluded, in deciding whether a refund is due under RCW 82.32.060, that courts must

[25]*See State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4TH 975 (1984).

determine whether the taxpayer "paid taxes in excess of that properly due . . . within the statutory refund period."

In *Puget Power*, Puget Sound Power & Light Company had paid public utility taxes for the years 1952 to 1957.[26] Included within the receipts upon which the tax was computed and paid were receipts this Court later concluded were not subject to the public utility tax.[27] Prior to that ruling, the Tax Commission had conducted an audit for the same years and issued a deficiency assessment which the taxpayer paid in 1959.[28] In 1961, Puget Power filed a petition for refund of the deficiency assessment paid in 1959. It did not request refund of the amount it paid between 1952 and 1957 based upon nontaxable receipts.[29] The Tax Commission refunded only the portion of the deficiency assessment which was based upon nontaxable receipts.[30] Puget Power sought recovery of the balance which was based upon taxable receipts.[31]

Referring to RCW 82.32.060 as its only guide, this Court determined that "[i]n order that the taxpayer be entitled to a refund under the statute, [the taxpayer] must have paid (1) taxes in excess of that properly due (2) within 2 years prior to his petition for refund."[32] The Court first determined the taxes sought by Puget Power were paid within the statutory refund period and then discussed whether the remainder of the deficiency assessment was in excess of that properly due:

> It is not denied that the public utility tax paid by appellant between 1952 and 1957 exceeds the proper total tax liability for that period, excluding the nontaxable receipts. However,

[26] 70 Wn.2d at 494.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] 70 Wn.2d at 495.

[32] 70 Wn.2d at 496.

the tax commission contends that the question of whether the deficiency assessment later paid is an amount "properly due" must be answered by ascertaining the basis on which it was assessed. Since the disputed amount here was based on properly taxable receipts, it is contended by the tax commission that it was an amount properly due regardless of the total amount paid by appellant on his public utility tax liability for that period. We do not agree.

. . . .

If the amount the taxpayer has paid exceeds his proper tax liability for a given period and for a particular tax, certainly no additional assessment therefor could be a sum "properly due." In this case, appellant has paid an amount in excess of the public utility tax properly due from it. The excess portion paid before 1957 is not refundable since more than 2 years had elapsed before he filed his petition for a refund. However, the deficiency assessment for an additional amount, under the analysis set forth above, is not an amount "properly due" from appellant. Since this amount was not properly due, the statute allows its refund upon petition timely filed. Appellant's petition for refund was filed within 2 years of the October 15, 1959 payment on the deficiency assessments and was, therefore, timely made.[33]

The Court concluded that Puget Power was entitled to a refund or credit for the full amount of the deficiency assessment paid on October 15, 1959.[34]

Petitioner contends the Court in *Puget Power* did not apply the offset provision of the statute, which has since been deleted, in reaching its conclusion. Petitioner notes that the payment in that case was made on October 15, 1959 within the refund period. Petitioner argues that the offset provision would have been necessary only if the payment Puget Power sought to recover had been made more than two years, but less than four years, prior to filing its refund petition on October 13, 1961. Petitioner concludes that because the Court did not rely on the offset provision, the

---

[33] 70 Wn.2d at 496-97.

[34] 70 Wn.2d at 497.

1979 amendment to RCW 82.32.060 did not affect the Court's decision in *Puget Power*.

Petitioner PACCAR asserts that the issue in this case is identical to that in *Puget Power* because PACCAR, like Puget Sound Power & Light Company, seeks recovery of its payment of a deficiency assessment. Petitioner points out that this case involves a claim for refund of taxes paid within the statutory refund period. In summarizing *Puget Power*, Petitioner states that the Court granted a refund of the entire deficiency assessment even though a portion had been assessed on a properly taxable base, reasoning that because the company had already overpaid its taxes at the time of assessment, none of the assessment was "properly due." Petitioner argues that it overpaid B&O taxes for the years 1977 to 1981, paid a deficiency assessment in 1983 issued by the Department covering the same period, and filed a refund petition in 1985 within the statutory refund period. According to Petitioner, it is entitled to a refund of the 1983 payment because it has met the requirements for a refund determined by this Court: it paid taxes in excess of the amount properly due within the statutory refund period of four years.

Petitioner argues that RCW 82.32.060 unambiguously provides that for purposes of the refund period, the relevant date is when the taxpayer paid the tax or deficiency assessment constituting the overpayment for which the taxpayer seeks a refund. Petitioner contends that, contrary to the decision of the Court of Appeals, the controlling dates are not the tax years audited by the Department, but the date of payment and the date of the petition for refund.

Petitioner asserts that even if the statute were ambiguous, its argument is supported by this Court's long-standing rule on statutory interpretation in tax cases that "[a]ny doubts as to the meaning of a statute under which a tax is

sought to be imposed will be 'construed against the taxing power.' "[35]

Petitioner looks at the legislative history of RCW 82.32.060 asserting that the Legislature has historically enlarged taxpayers' opportunities for relief. Petitioner notes that at the time of the *Puget Power* decision, the refund period was two years under the statute while the assessment period was four years. Petitioner reasons that to provide limited additional relief, the Legislature allowed any overpayment made during the two years prior to the refund period to be offset by any deficiency assessment for the same period. Petitioner asserts that in 1979, the Legislature extended the refund period to four years to coincide with the assessment period instead of allowing merely an offset for two of the four years; and in 1992 amended the statute to permit refunds not only of "the excess amount paid within [the refund period]," but also "the excess amount attributable to, such period."[36] Petitioner concludes that the decision of the Court of Appeals, which curtails taxpayers' opportunity for relief, is inconsistent with legislative intent.

Conversely, Respondent contends that because RCW 82.32.060 was amended in 1979, the 1967 *Puget Power* decision is not on point and is of limited, if any, value. Respondent argues that a proper reading of *Puget Power*

---

[35]*Weyerhaeuser Co. v. Department of Revenue*, 106 Wn.2d 557, 566, 723 P.2d 1141 (1986) (quoting *Duwamish Warehouse Co. v. Hoppe*, 102 Wn.2d 249, 254, 684 P.2d 703 (1984)). *See also Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 134, 587 P.2d 535 (1978) (if there is doubt as to the meaning of a taxing statute, it is to be construed in favor of the taxpayer and against the taxing body).

[36]RCW 82.32.060. **Excess payment of tax, penalty, or interest—Credit or refund—Payment of judgments for refund.** (1) If, upon receipt of an application by a taxpayer for a refund or for an audit of the taxpayer's records, or upon an examination of the returns or records of any taxpayer, it is determined by the department that within the statutory period for assessment of taxes, penalties, or interest prescribed by RCW 82.32.050 *any amount of tax, penalty, or interest has been paid in excess of that properly due, the excess amount paid within, or attributable to, such period shall be credited to the taxpayer's account or shall be refunded to the taxpayer, at the taxpayer's option. . . .*

. . . .

(Emphasis added.)

should lead to the conclusion that this Court based its decision on the offset provision in the 1961 version of the statute which was deleted in the 1979 version. Respondent argues that in *Puget Power* this Court looked solely to the statute for guidance and the Court quoted portions of RCW 82.32.060, specifically noting the provision which provided for an offset:

> Where a refund or credit may not be made because of the lapse of said two year period, the amount of the refund or credit which would otherwise be allowable for the portion of the statutory assessment period preceding the two year period may be offset against the amount of any tax deficiency which may be determined by the commission for such preceding period.[37]

Respondent asserts this Court obviously relied upon the offset provision because the result it reached was possible only by using it. According to Respondent, this Court in *Puget Power* concluded (1) Puget Power had paid an amount in excess of the public utility tax properly due for the period 1952 to 1957; (2) the excess public utility tax paid between 1952 and 1957 was not refundable since more than two years had elapsed before Puget Power filed for refund; and (3) the 1959 deficiency assessment, although based in part on properly taxable receipts, was not an amount properly due because of the earlier overpayments and was refundable only under the offset provision of the statute upon timely appeal.

Respondent contends that if the offset provision was not necessary for the conclusion reached by the Court, the offset provision was then superfluous and meaningless, contrary to the presumption that the Legislature does not engage in meaningless acts.[38] Respondent reasons that when the refund and assessment periods did not coincide, application of the offset provision was necessary; however, in 1979 when the Legislature changed the refund period to

---

[37] 70 Wn.2d at 495 (quoting RCW 82.32.060).

[38] *JJR Inc. v. City of Seattle*, 126 Wn.2d 1, 10, 891 P.2d 720 (1995).

four years to coincide with the assessment period, the offset provision was no longer necessary and was thus deleted.

Respondent argues that Petitioner now seeks the offset adjustment provided by the 1961 version of RCW 82.32.060 which was in effect at the time of the *Puget Power* decision. According to Respondent, the unambiguous language of the 1979 amended version of RCW 82.32.060 does not provide for such an offset and Petitioner thus has no statutory authority upon which to justify relief. Respondent argues that, for purposes of the statutory refund period, what is relevant is whether the taxes sought to be recovered were paid within that period. Respondent concedes that if Petitioner had challenged the deficiency assessment and "sought a refund of those taxes actually assessed, its 1985 complaint would have been timely." Concluding, however, that Petitioner seeks recovery of the B&O taxes paid in the years 1977 to 1980, Respondent contends the refund period expired in 1984—a full year before Petitioner filed its refund petition—and consequently recovery is barred because Petitioner "sat on its hands" until 1985.

To support its argument, Respondent reasons that both taxpayers and the Department of Revenue have a substantial interest in closing out tax years from assessments of additional taxes or application for refunds. Respondent claims that for this reason, statutes conferring credits, refunds, or deductions are narrowly construed under this Court's decision in *Lacey Nursing Ctr., Inc. v. Department of Revenue*.[39] Respondent argues that Petitioner's appeal to this Court's equitable powers for relief is misplaced because the issue is purely one of statutory construction. Citing *Pittock & Leadbetter Lumber Co. v. Skamania County*,[40] Respondent asserts that it is a well settled rule of law that taxes voluntarily paid cannot be recovered absent some constitutional or statutory provision expressly granting that right. Respondent thus concludes that upon a narrow

[39]128 Wn.2d 40, 49, 905 P.2d 338 (1995).

[40]98 Wash. 145, 147, 167 P. 108 (1917).

construction of the plain language of RCW 82.32.060, the statute expressly prohibits recovery. According to Respondent, the statute is a nonclaim statute, and not a statute of limitations.[41]

Respondent asserts, in the alternative, that even if *Puget Power* is applicable to this case, PACCAR cannot net or offset one type of tax against another type. Respondent claims that while it nets taxes for periods within the statutory refund and assessment period, it does not net an overpayment outside the statutory refund period against a deficiency within the statutory assessment period. Respondent admits it did net different types of taxes outside the statutory refund period in the deficiency assessment against PACCAR, but states it did so in error.

According to Respondent, Petitioner's claim that this Court's decision in *Puget Power* entitles it to a refund of the entire deficiency assessment is not supported by the facts or the holding of the case. Respondent cites this Court's conclusion that "if the amount the taxpayer has paid exceeds his proper tax liability for a given period and for a particular tax, certainly no additional assessment therefore could be a sum 'properly due.' "[42] Respondent asserts *Puget Power* involved "a particular tax" in contrast to this case which involves different types of taxes. Respondent concludes that PACCAR cannot offset its overpayments of B&O taxes against use and sales taxes, noting that it has already received a tax credit for the portion of the assessment attributable to the B&O taxes.

Petitioner argues that Respondent's assertion that *Puget Power* provides that "dissimilar" taxes cannot be offset is based upon dictum which has no force as precedent; and besides, *Puget Power* involved only one type of tax and netting different types of taxes was not an issue.[43]

According to Petitioner, Respondent's assertions are

---

[41]*Guy F. Atkinson Co. v. State*, 66 Wn.2d 570, 572, 403 P.2d 880 (1965).

[42]70 Wn.2d at 497.

[43]*Kish v. Insurance Co. of N. Am.*, 125 Wn.2d 164, 172, 883 P.2d 308 (1994).

contradicted by its own practice. Petitioner contends that Respondent's claim that it nets taxes only for periods within the statutory refund period is not correct and is not relevant because Petitioner does not seek to net credits for one period against taxes for another period. Petitioner points out that the taxes and credits to be netted are those for the same years, all contained in the Department's single assessment for the same period.

Petitioner emphasizes that the Department concedes that, both on taxpayers' returns and in the Department's assessments, different types of taxes and credits are considered together to calculate the amount of tax properly due or refundable. Referring to the deficiency assessment in this case, Petitioner argues that the Department calculated PACCAR's overpayment of B&O taxes with its underpayment of other taxes to determine the net amount properly due; and that therefore netting must be allowable under RCW 82.32.060, which governs computation of tax refunds. Petitioner reasons that under RCW 82.32.060, in conjunction with RCW 82.32.180, courts have the same authority as the Department to determine whether taxes are properly due.

The Court of Appeals agreed with Respondent, stating that this case involves a question of statutory interpretation, a question of law which the court reviews de novo.[44] Both parties cited *Puget Power* in argument before the court, but the Court of Appeals did not refer to the case in its opinion.

Although the Court of Appeals determined the suit filed by Petitioner in 1985 "to dispute the deficiency in 1983 is timely under the statute's four-year provision," it considered Petitioner's action as a petition for refund of B&O tax overpayments made in the years 1977 to 1980.[45] Observing that PACCAR in its summary judgment motion argued it was entitled to a refund "through an offset mechanism,"

---

[44] 85 Wn. App. at 52-53.

[45] 85 Wn. App. at 54.

the court noted that "this equitable solution was available to a taxpayer in the original version of RCW 82.32.060."[46] The court explained that by the time of PACCAR's suit, the Legislature had amended the statute and removed the offset provision, making it clear it no longer wished to provide such an option:

> The amended statute unambiguously states that "[n]o refund or credit shall be made for taxes paid more than four years prior to the beginning of the calendar year in which the refund application is made. . . ." Former RCW 82.32.060 (1985) [sic]. "Unambiguous statutory language must be given its unambiguous meaning." No matter how equitable the prior offset provision seemed, "[a] court may not add words to a statute even if it believes the Legislature intended something else but failed to express it adequately." When Paccar filed its suit in 1985, it was not entitled to a refund or offset of its 1977-80 overpayments.

Though Paccar conceded at oral argument that the deletion of the offset provision made refund and offset unavailable, it argued that its overpaid taxes should be "netted" against the deficiency that it paid in 1983. It failed, however, to distinguish this latter argument from the former. Whether it is seeking to net, offset, or credit its overpayment against its deficiency payment, it is nonetheless seeking to gain a refund of overpayments that it failed to contest within the four-year period. To acknowledge the overpayments in the mix of the taxes paid for the deficiency would amount to a refund in violation of the statute.

The trial court erred in granting summary judgment in favor of Paccar. A suit for refund was not commenced until 1985. RCW 82.32.060 clearly precludes any credits on amounts paid outside of the four-year period, such as the overpayment that was made in 1977-80. Paccar's argument that its overpayment is entitled to consideration, no matter how artfully phrased, is time-barred. It may seem harsh to direct the trial court to ignore overpayments that occurred within the same period for which a deficiency was assessed, as if the overpayment never occurred; correction, however, rests with the

[46]*Id.*

Legislature. The statute expressly states that refund and credit are only available to correct overpayment if the overpayment occurred within the four-year period.[47]

The Court of Appeals concluded that, under the unambiguous language of the 1979 version of RCW 82.32.060, Petitioner PACCAR is barred by the four-year limitation period from a refund of overpayments made from 1977 to 1980.

Petitioner, however, is seeking refund of the deficiency assessment it paid in 1983, claiming the taxes it paid were in excess of those "properly due." Although the Court of Appeals determined Petitioner's suit filed in 1985 to dispute the assessment was timely, the court considered its claim for a refund an "offset" not permitted under the 1979 statute. The court concluded Petitioner is not entitled to a refund of its 1983 payment of the deficiency assessment based upon taxes which had been paid prior to the four-year refund period. That decision is inconsistent with this Court's decision in *Puget Power*.

■ Like PACCAR, Puget Sound Power & Light Company sought a refund of the deficiency assessment payment by filing a refund petition within the statutory refund period. This Court stated that "[s]ince the disputed amount here was based on properly taxable receipts, it is contended by the tax commission that it was an amount properly due regardless of the total amount paid by appellant on his public utility tax liability for that period. We do not agree."[48] The Court concluded that Puget Power was entitled to refund of the full amount of the deficiency assessment, reasoning that "[i]f the amount the taxpayer has paid exceeds his proper tax liability for a given period and

[47]85 Wn. App. at 55-56 (footnotes omitted).

[48]70 Wn.2d at 496.

for a particular tax, certainly no additional assessment therefor could be a sum 'properly due.' "[49]

## SUMMARY AND CONCLUSION

Petitioner PACCAR overpaid B&O taxes for the years 1977 to 1981 in the amount of $304,678.00. In 1983, Petitioner paid a deficiency assessment consisting of B&O, use, and sales taxes for the same period in the amount of $176,205.00. Petitioner filed a refund petition in 1985 for refund of the deficiency assessment taxes paid in 1983. Respondent Department refunded the B&O taxes overpaid in 1981 in the amount of $102,071.00 and the deficiency assessment attributable to B&O taxes in the amount of $18,081.00.

 The 1979 version of RCW 82.32.060, in effect when Petitioner filed its refund petition in 1985, states that if a tax has been paid in excess of that properly due, the excess amount shall be refunded if a refund petition is filed within four years of the year in which the tax is paid. The language of the statute is unambiguous. Therefore under its plain and ordinary meaning, Petitioner is entitled to a refund of taxes paid in excess of those properly due if Petitioner files a refund petition within four years of the payment.

As the trial court determined, because Petitioner PACCAR overpaid its taxes in the years 1977 to 1981, it should have received a refund instead of an assessment of additional taxes. Consequently, the entire amount PACCAR paid as a result of the deficiency assessment, $176,205.00, was paid "in excess of the amount properly due." The applicable versions of RCW 82.32.060 provide that petitions for refunds are timely if filed within four years of the year in which the tax was paid. PACCAR filed its petition in 1985, within four years of its 1983 payment of the deficiency assessment. Its petition was timely filed.

 Different types of taxes and credits are considered

[49]*Id.* at 497.

together on taxpayers' returns and in the Department's assessments to calculate the amount of tax properly due or refundable. Thus "netting" must be allowable under RCW 82.32.060, the statute governing computation of tax refunds. Under the statute, a calculation of taxes properly due is based upon total tax liability. The trial court properly concluded the statute does not limit the refund to the particular type of tax as to which there was a substantive error.

This Court concluded in *Puget Power* that a taxpayer is entitled to a refund under RCW 82.32.060 if the taxpayer has within the statutory refund period paid taxes in excess of those properly due. Despite several amendments to RCW 82.32.060, this Court's earlier interpretation of the statute is still binding because the provisions of the statute upon which the Court based its decision remain unchanged.

In *Puget Power,* the Court did not apply the offset provision in granting a refund of taxes overpaid in 1959 because a timely refund petition was filed in 1961. Under the statute, taxes nonrefundable because of lapse of the refund period could be offset against a deficiency assessment issued for the same period. The offset provision was not necessary because, as the Court concluded, the taxes sought by appellant [Puget Power] were paid within two years of the filing of its petition for refund.

In holding that "taxes that have become nonrefundable may not be credited against a later deficiency assessment of that same period," the Court of Appeals did not determine whether the 1983 payment by Petitioner PACCAR of $176,205.00 was in excess of that properly due. The Court of Appeals did not apply the statutory standard determined by this Court. The trial court did so.

Under RCW 82.32.060, a taxpayer may receive a refund of excess taxes paid upon a deficiency assessment calculated for a period prior to the statutory four-year refund period if the taxpayer files a petition for refund within four years of actual payment of the deficiency assessment.

We reverse the decision of the Court of Appeals which re-

versed the decision of the trial court granting summary judgment in favor of Petitioner PACCAR and ordering a refund of the entire deficiency assessment as an overpayment, with a net amount due after credit for refund already made of $181,390.00 plus $67,511.00 prejudgment interest and additional interest until judgment was entered.

GUY, JOHNSON, ALEXANDER, and SANDERS, JJ., concur.

TALMADGE, J. (dissenting) — In enacting RCW 82.32.050 (assessments against taxpayers), and RCW 82.32.060 (refunds for taxpayers), the Legislature intended to establish an ironclad four-year, no-claim period for taxes due to the State of Washington. Because the majority erroneously determines the point at which the four-year time period begins and potentially undercuts the no-claim period, I respectfully dissent.

For the period from 1977 to 1981, PACCAR paid business and occupation (B&O) taxes on interest income from its subsidiaries. In 1982, the Department of Revenue (DOR) audited PACCAR's tax payments and issued an assessment in December of that year indicating PACCAR had substantially underpaid taxes, primarily use taxes. In February 1983, PACCAR paid the deficiency and then appealed to DOR for a refund arguing no B&O tax was due on its subsidiary interest income. DOR denied the appeal and no further appeal by PACCAR was taken from that decision. In December 1985, PACCAR sued DOR in the Thurston County Superior Court. Then, in December 1994, some nine years after the filing of the original action, PACCAR filed a motion for summary judgment, which the trial court granted holding PACCAR had no obligation to pay B&O taxes on its subsidiaries' interest income. The trial court, in effect, allowed PACCAR at least a partial refund for B&O taxes on interest income of its subsidiaries for the period from 1977 to 1980.

The Court of Appeals reversed the trial court decision, holding the 1979 amendments to RCW 82.32.050 and .060

did not provide for the type of offset that would allow PAC-CAR to obtain a refund. The Court of Appeals ruled PAC-CAR's claim for a refund of B&O taxes during the period for 1977 to 1980 had lapsed.

DOR asserts PACCAR made no petition for a refund of its 1977-1980 overpayments within the four-year, no-claim period. The Court of Appeals agreed: "Paccar did not submit a refund application for the 1977-80 period until it received the 1985 assessment." *PACCAR, Inc. v. Department of Revenue*, 85 Wn. App. 48, 49, 930 P.2d 954 (1997).[50] Both are incorrect. PACCAR, in its February 13, 1983 letter to DOR, formally petitioned for a refund of the B&O taxes it paid on subsidiary interest income for 1977 through 1981. The central issue in this case is, what years come within the purview of the no-claim statute for purposes of a refund for overpayments.

The pertinent part of the no-claim statute, RCW 82.32.060(1), reads as follows: "Except as provided in subsections (2) and (3) of this section, no refund or credit shall be made for taxes, penalties, or interest paid more than four years prior to the beginning of the calendar year in which the refund application is made or examination of records is completed." Because PACCAR made its refund application on February 13, 1983, no refund could be made to PACCAR for any taxes it paid more than four years prior to the beginning of 1983. Thus, PACCAR could have received refunds for any overpayments it made in 1982, 1981, 1980, and 1979, but not for overpayments it made in 1978 and 1977, as the latter two dates are more than four years prior to the beginning of 1983.

After a formal hearing, DOR rejected PACCAR's administrative appeal in a Determination dated December 23, 1983. The administrative law judge did not discuss the operation of the no-claim statute on PACCAR's request for refunds extending back through 1977, but denied the entire claim

[50]The Court of Appeals was mistaken in referring to a 1985 assessment. The relevant assessment in this case was the December 21, 1982 audit report by DOR assessing excise taxes against PACCAR.

anyway. PACCAR was entitled to appeal this determination pursuant to RCW 82.03.190, but did not do so. Thereafter, as each succeeding year went by, the no-claim statute cut off another year from PACCAR's right to receive a refund for overpayment of B&O taxes.

On December 30, 1985, PACCAR filed the underlying complaint in this case, alleging it was entitled to a refund for B&O tax payments it made from 1981 through 1985.[51] This claim was clearly *within* the four-year, no-claim window. PACCAR also alleged, however, it was entitled to a refund of B&O tax payments it had made from 1977 through 1980. These years are plainly *outside* the four-year, no-claim window. To survive dismissal of its late claim, PACCAR has concocted a creative argument.

PACCAR argues that during the 1982 DOR audit, DOR should have recognized the B&O tax PACCAR paid on interest income from 1977 to 1981 was refundable. PACCAR argues DOR's failure to award PACCAR a refund during the 1982 audit for those years is equivalent to, and should be treated as, an assessment. Thus, PACCAR argues, DOR "assessed" PACCAR in 1982, and the subsequent lawsuit in 1985 protesting that "assessment" is therefore within the four-year, no-claim window.

This is a highly strained and logically insupportable version of the facts. Failure to recognize entitlement to a refund is not an assessment in either logic or law. PACCAR has not cited any case anywhere for such a proposition, and I can find none.[52] DOR did not "assess" PACCAR for the 1977 through 1980 payments. In the sense a tax return may be considered a *self*-assessment, *Matter of Carlson,*

---

[51]This lawsuit was not an appeal from the adverse DOR determination of December 23, 1983, but was instead an original action for a refund.

[52]"An 'assessment' of taxes is a formal, discrete act with specific legal consequences." *In re Heritage Village Church & Missionary Fellowship, Inc.*, 87 B.R. 401, 403 (D.S.C.), *aff'd*, 851 F.2d 104 (4th Cir. 1988); *see also In re King*, 122 B.R. 383, 385 (9th Cir. BAP (Cal.) 1991) (" 'to assess' refers to a formal act of fixing of tax liability, and that this act comes after the calculation is completed"), *aff'd*, 961 F.2d 1423 (9th Cir. 1992). Here, the only relevant assessment was the deficiency assessment DOR presented to PACCAR on December 21, 1982. DOR's *failure to grant* PACCAR a refund for overpayment of B&O taxes in the calculation

580 F.2d 1365, 1368 (10th Cir. 1978), PACCAR assessed *itself* for the overpayments it made during those years: it made those payments voluntarily under the ultimately mistaken belief the law required it to do so. DOR's 1982 audit was not an "assessment."

Moreover, PACCAR had its day in court as to its claimed entitlement to a refund. It chose to abandon that quest by not appealing the adverse administrative Determination to the Board of Tax Appeals, as it was entitled to do. There is no injustice to dismissing PACCAR's identical claim in the present case.[53]

Our decision in *Puget Sound Power & Light Co. v. State*, 70 Wn.2d 493, 424 P.2d 634 (1967), upon which the majority relies, was decided under the 1961 versions of the refund and assessment statutes. Those statutes provided for the type of offset that was allowed by the trial court in this instance. The version of RCW 82.32.050 and .060 enacted by the Legislature in 1979, and in effect at all pertinent times in this case, made clear any tax assessments or refunds were unavailable if *more than four years had expired from the time the tax had been paid*. As RCW 82.32.060 (the refund statute) explicitly states:

> [N]o refund or credit shall be made for taxes, penalties, or interest paid more than four years prior to the beginning of the calendar year in which the refund application is made or examination of records is completed.

Similar language appears in the assessment statute as well. The unambiguous intent of the Legislature was to provide a four-year, no-claim period for taxes, either refunds or assessments by DOR. Insofar as PACCAR waited in this case to file its action in 1985 with respect to taxes owed during the time period from 1977 to 1981, it lost the right to seek

---

of PACCAR's total tax deficiency in 1982 does not mean DOR *assessed* those overpayments against PACCAR.

[53]I note PACCAR's claim is precisely the same as the one it made in the administrative proceeding in 1983, and the parties are the same. DOR has made no argument this suit should be barred either by res judicata or failure to exhaust administrative remedies.

a refund with respect to B&O taxes on its subsidiaries' interest income it had erroneously paid.[54]

I would affirm the decision of the Court of Appeals.

DURHAM, C.J., and DOLLIVER, J., concur with TALMADGE, J.

Reconsideration denied August 14, 1998.

Nos. 65546-4; 65734-3. En Banc.]
Argued March 10, 1998. Decided June 4, 1998.

---

[54]In this case, it is a fortuity that a taxpayer is seeking a refund after an audit by DOR. The majority enlarges the time period for this taxpayer to seek a refund, in effect, starting the clock on the four-year time period from the completion of the DOR audit. A significant problem with such an analysis is that the language of the *assessment statute* parallels that of the refund statute. The majority opens the door to DOR to conduct audits and assess taxpayers for back taxes from time periods formerly believed to have been closed. If DOR conducts an audit, DOR can seek assessments under RCW 82.32.060 for time periods predating the four-year tax period and require the taxpayer to pay additional taxes based on the audit results. This was not the intent of the Legislature in adopting the 1979 changes to the tax assessment and tax refund statutes.