[No. 25704-1-II. Division Two. May 18, 2001.]

NEW WEST FISHERIES, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*George C. Mastrodonato* and *Michael B. King* (of *Lane Powell Spears Lubersky, L.L.P.*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Debra E. Casparian, Assistant*, for respondent.

SEINFELD, J. — This case involves the enhanced food fish tax, RCW 82.27.020. New West Fisheries, Inc., challenges a fish tax assessment of $51,652, claiming that it is entitled to a credit for workers' compensation and unemployment insurance taxes its suppliers paid to Canadian authorities. RCW 82.27.040 allows a credit against the fish tax for "any tax previously paid on that same enhanced food fish to any other legally established taxing authority." Finding that the Canadian authorities were taxing the activity of employing others, not imposing a tax "on" the food fish, we affirm the trial court ruling upholding the assessment.

## FACTS

New West is a Washington corporation that processes fresh fish at its Bellingham facility. Canadian fishers captured the fish involved in this case in Canadian waters and sold them to Canadian fish buyers who then transported the fish over the border to New West's facility in Bellingham. The Canadian fish buyers, San Juan Fishing Company and New Pacific Fishing Company, Inc., paid Canadian taxing authorities the following three taxes based on the value of the fish: a marketing tax, an unemployment insurance tax, and a workers' compensation tax. New West reimbursed the Canadian fish buyers for these taxes in accordance with their financial agreement.[1]

The Department of Revenue (Department) audited New West to determine its compliance with the fish tax set forth in RCW 82.27.020. The Department allowed New West a credit under the fish tax credit statute, RCW 82.27.040, for the Canadian marketing tax and import duties paid to the

---

[1] Following the denial of the fish tax credits, New West apparently terminated its contracts with Canadian fish buyers and created its own Canadian company to purchase fish directly.

United States. But it disallowed the credit for the workers' compensation taxes and the unemployment insurance taxes.

The Board of Tax Appeals upheld the Department's determination as to the two Canadian taxes at issue and New West then brought a refund action in Thurston County Superior Court under RCW 82.32.180.[2] Following a hearing, the trial court entered findings of fact and conclusions of law, which included the following:

### FINDINGS OF FACT

. . . .

3. The Department of Revenue examined New West Fisheries' books and records for the period January 1, 1993, through December 31, 1993, to determine plaintiff's compliance with Washington's fish tax law. As a result of the audit, a tax assessment was issued in the total amount of $67,905, for additional fish tax due. Later adjustments reduced the assessment to $51,652.

4. The fish tax assessment was primarily upon sockeye salmon imported into Washington. This species of salmon is indigenous to the Skeena River system in Prince Rupert, and the Frazier River, and caught at Johnstone Strait or San Juan, all within British Columbia, Canada.

5. The sockeye salmon were captured by independent fishermen in Canadian waters. They were transferred to tenders of two Canadian companies, San Juan Fishing Company and New Pacific Fishing Company, Inc. The fish were "landed", i.e., brought to shore, in Canada and then transported by truck over

---

[2] RCW 82.32.180 provides in part:

Any person . . . having paid any tax as required and feeling aggrieved by the amount of the tax may appeal to the superior court of Thurston county, within the time limitation for a refund provided in chapter 82.32 RCW or, if an application for refund has been made to the department within that time limitation, then within thirty days after rejection of the application, whichever time limitation is later. . . .

The trial in the superior court on appeal shall be de novo and without the necessity of any pleadings other than the notice of appeal. At trial, the burden shall rest upon the taxpayer to prove that the tax as paid by the taxpayer is incorrect, either in whole or in part, and to establish the correct amount of the tax.

the United States/Canadian border to Bellingham, Washington, where they were sold to New West Fisheries, Inc. The fish were then processed at plaintiff's facility and resold.

6. Based on fish tickets received from the Department of Fisheries, the Department assessed New West Fisheries, Inc. the enhanced food fish tax on these salmon imported from Canada.

. . . .

8. Washington's fish tax is measured by the value of the enhanced food fish at the point of landing. RCW 82.27.020(3). A credit is allowed with respect to any tax previously paid on the same fish to any other legally established taxing authority. . . .

. . . .

11. The unemployment insurance taxes and workers' compensation tax, like the marketing tax, were not paid by New West Fisheries, but instead, were paid by the Canadian fishermen or fish buyers operating tenders in Canadian waters and then reimbursed by New West Fisheries, Inc.

. . . .

CONCLUSIONS OF LAW

. . . .

2. To be eligible for the enhanced food fish credit, taxes must be levied on the privilege of possessing fish.

3. Workers' Compensation Taxes and Unemployment Insurance Taxes are common, payroll deduction-type taxes paid by workers and employers in general rather than taxes levied on the privilege of possessing fish. All Canadians must pay these taxes whether in the fishing industry or not.

4. The Canadian government has chosen to base the taxes on the value of the fish, at the time it is landed rather than some other basis. Their determination on the method of calculation is not binding on the State of Washington.

5. The Court must look behind the tax and see why they are being taxed in order to see if the credit applies. In this case, the purpose is clearly for unemployment and workers' compensation and the Department of Revenue rightfully denied the credits.

Clerk's Papers at 50-53.

ANALYSIS

 We review the superior court's findings and conclusions. *See PACCAR, Inc. v. Dep't of Revenue*, 135 Wn.2d 301, 307, 957 P.2d 669 (1998). As New West does not dispute any of the trial court's findings of fact, they are verities on appeal. *Stuewe v. Dep't of Revenue*, 98 Wn. App. 947, 950, 991 P.2d 634, *review denied*, 141 Wn.2d 1015 (2000). New West does assign error to conclusions of law 2, 3, 4, and 5. Because New West's allegations of error involve construction of the fish tax credit statute, we review the conclusions of law de novo. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996); *Safeway, Inc. v. Dep't of Revenue*, 96 Wn. App. 156, 159, 978 P.2d 559 (1999).

New West asserts that the fish tax credit statute plainly and unambiguously provides that "any" tax previously paid on the same fish entitles the owner to a credit against the fish tax imposed in RCW 82.27.020. According to New West, this includes the workers' compensation and unemployment insurance taxes it paid by reimbursing the Canadian fish buyers. The Department responds that we must look to the taxable event or what incident the tax is "on" or "upon" and that the fish tax credit pertains only to taxes paid "on" the commercial possession of enhanced food fish. The Department argues that the workers' compensation and unemployment insurance taxes were "on" the right to employ persons in Canada, not "on" the fish.

 In construing a statute, our goal is to effectuate the legislative intent. *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 636, 946 P.2d 409 (1997). "Legislative intent is ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation." *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 401, 722 P.2d 787 (1986). But a clear and unambiguous statute is not subject to judicial construction. *State v. Azpitarte*, 140 Wn.2d 138, 141, 995 P.2d 31 (2000).

RCW 82.27.020[3] imposes an excise tax on the commercial possession of enhanced food fish. The taxable event is the first possession of the fish by the owner in Washington. RCW 82.27.020(1). The legislature has also provided for a credit against the fish tax as follows:

> A credit shall be allowed against the tax imposed by RCW 82.27.020 upon enhanced food fish with respect to *any tax previously paid on that same enhanced food fish to any other legally established taxing authority*. To qualify for a credit, the owner of the enhanced food fish must have documentation showing a tax was paid in another jurisdiction.

RCW 82.27.040 (emphasis added).

■ We must interpret and construe statutes "so that all the language used is given effect, with no portion rendered meaningless or superfluous." *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). New West emphasizes the statutory words "any tax" to support its claim to a credit; the Department highlights the language providing that the tax must be paid "on" the same fish. Both parties acknowledge that Canadian authorities use the value of the fish to calculate the amount of unemployment and workers' compensation taxes owing.[4] New West explains that this is because of the use of the "share" system to pay fishers.

---

[3] RCW 82.27.020 provides in part:

(1) In addition to all other taxes, licenses, or fees provided by law there is established an excise tax on the commercial possession of enhanced food fish as provided in this chapter. The tax is levied upon and shall be collected from the owner of the enhanced food fish whose possession constitutes the taxable event. The taxable event is the first possession in Washington by an owner. Processing and handling of enhanced food fish by a person who is not the owner is not a taxable event to the processor or handler.

. . . .

(3) The measure of the tax is the value of the enhanced food fish at the point of landing.

[4] For example, the Canadian Employment Insurance (Fishing) Regulations provide that "[t]he earnings of a fisher are the amount paid or payable to the fisher in respect of a catch, in accordance with the share arrangement, after deducting the value of any portion of the catch not caught by the crew of which the fisher is a member." C.R.C. 119, 405 § 5(2) (1996).

■ New West's emphasis on the use of "any tax" is not persuasive because the plain language of the statute limits these words to "any tax previously paid on that same enhanced food fish." Although the use of the word "any" may broaden the scope of a statute, a focus on "any" that ignores the immediately subsequent language renders that language superfluous. *See Rettkowski*, 128 Wn.2d at 516; *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991) (construing "any" to mean "every" and "all"); *Allied Fin. Servs., Inc. v. Mangum*, 72 Wn. App. 164, 167, 864 P.2d 1, 871 P.2d 1075 (1993) (same); *Dick v. Att'y Gen.*, 9 Wn. App. 586, 589, 513 P.2d 568 (1973), *aff'd*, 83 Wn.2d 684 (1974).

■ New West also contends that the word "any" makes the statute unambiguous and renders it immune from judicial construction. A statute is ambiguous if it is susceptible of more than one reasonable interpretation. *Stroh Brewery Co. v. Dep't of Revenue*, 104 Wn. App. 235, 239, 15 P.3d 692 (2001). New West reads the language "any tax previously paid on that same enhanced food fish" very broadly to encompass any tax calculated on the basis of the fish value, like the Canadian taxes in this case. RCW 82.27.040.

The Department provides an even more persuasive argument that we must distinguish between the measure of the tax and the taxable event, or the incidence of the tax. According to the Department, referring to what a tax is "on" relates to the taxable event. Thus, a workers' compensation tax is a tax on the privilege of employing others, not a tax on the privilege of possessing fish. *See Bates v. McLeod*, 11 Wn.2d 648, 654, 120 P.2d 472 (1941). The value of the fish merely provides the measure for the amount of taxes the employer must pay.

Where as here, the statute is susceptible of more than one reasonable interpretation, we defer to the Department's interpretation of the statute if that interpretation does not conflict with the statutory language and is within the agency's expertise. *Safeway*, 96 Wn. App. at 160; *Sacred Heart Med. Ctr.*, 88 Wn. App. at 637. Further, while the

court would usually construe an ambiguous tax statute most strongly against the taxing authority, this rule does not apply to provisions providing for credits, exemptions or deductions; we strictly construe these provisions against the taxpayer. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 49, 905 P.2d 338 (1995); *Group Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967).

The credit statute appears to address concerns regarding multiple taxation of the same activity.[5] As the United States Supreme Court has recognized, "[m]any States provide tax credits that alleviate or eliminate the potential multiple taxation that results when two or more sovereigns have jurisdiction to tax parts of the same chain of commercial events." *Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 246 n.13, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987).

Considering the statutory language and the statutory purpose, New West was not entitled to the fish tax credit for the two Canadian taxes. The fish excise tax set forth in RCW 82.27.020 is "on" the first commercial possession of the fish in Washington by the owner and the amount of the tax is measured by the value of the fish at the point of landing. The credit statute, referring back to the fish tax statute, allows a credit against the fish tax for any other tax paid "on" the same fish. RCW 82.27.040. The Department's suggestion that "on" bears the same meaning in both statutes is reasonable, particularly where there is no reference to the measure of the tax in the credit statute.

Further, a credit for these two Canadian taxes would not further the purpose of avoiding multiple taxation. These taxes affect different parts of the commercial chain of

---

[5] While not binding on this court, the Board of Tax Appeals also recognized this purpose stating that "[t]he principle underlying this credit is: if an owner's activities in another taxing jurisdiction are sufficient to confer jurisdiction to impose a tax, Washington must provide a means of apportioning the taxable income. To hold otherwise would be to allow multiple tax burdens on the same activity." Br. of Resp't, App. A at 4.

events and, thus, multiple taxation is not a concern.[6] That Canada has chosen to use the value of the fish to measure wages does not alter the nature of the two taxes.

New West also argues that international comity supports its interpretation of the fish tax credit statute. According to New West, the trial court's interpretation rejected the Canadian taxing scheme.

The Court of Appeals has described international comity as

> a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws.

*Mayekawa Mfg. Co. v. Sasaki*, 76 Wn. App. 791, 799, 888 P.2d 183 (1995) (quoting *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971)). New West has failed to explain how international comity supports its interpretation of the credit statute. Concluding that Canada uses the value of the catch to measure workers' compensation and unemployment insurance taxes does not indicate a lack of regard for Canadian law. Rather, it involves interpreting and applying this fact to Washington law.

New West also argues that the legislature, when it allowed a credit for "any tax," intended to avoid making the Department determine the incidence and measure of foreign taxes. New West asserts that the Department's interpretation of the credit statute conflicts with commercial reality by forcing the taxpayer to divine the incidence of all

---

[6] Again, the Board of Tax Appeals recognized that allowing a credit in this case would not further the purpose of the credit statute, stating: "To be eligible for the credit, the taxes must be levied on the privilege of possessing fish. The credit Taxpayer seeks to obtain is for taxes levied on the privilege of doing business in Canada. Allowing a credit for these taxes would not further the goal [of] apportioning fish tax income." Br. of Resp't, App. A at 4.

foreign taxes paid on the fish and contends that the legislature did not intend to place Washington fish buyers at a competitive disadvantage.[7] Taxation, and particularly international taxation, is inevitably a complex area, but New West's practical arguments do not supersede the language of the credit statute. And even under New West's interpretation of the credit statute, the taxpayer would still have to determine the measure of the tax, as New West presumably did in this case.

Thus, construing the fish tax credit statute narrowly, as we must, and interpreting any ambiguity in favor of taxation, New West was not entitled to credit against the fish tax imposed under RCW 82.27.020 for the Canadian workers' compensation and unemployment insurance taxes it paid through reimbursements of the Canadian fish buyers.

Consequently, we affirm.

HUNT, A.C.J., and QUINN-BRINTNALL, J., concur.

---

[7] New West paid these taxes through reimbursements pursuant to its own agreement with Canadian fish buyers. This agreement was necessary because under Canadian law only registered Canadian buyers can purchase fish from the fishers. Thus, if New West is at a competitive disadvantage, it arguably placed itself in that position. New West may have remedied any disadvantage by terminating its agreement with the Canadian fish buyers and establishing its own Canadian company to purchase fish directly.